FILED
 2017 Jul-26  AM 10:56
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ESSIE BANKS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   7:17-cv-00198-LSC |
| ANTONIO BOSTIC, | ) ) |
| Defendant. | ) ) ) |

**Memorandum of Opinion**

Plaintiff Essie Banks ("Plaintiff") brings this action against Defendant Antonio Bostic ("Defendant"), alleging claims for malicious prosecution under 42 U.S.C. § 1983. Before this Court is Defendant's motion to dismiss. (Doc. 3.) For the reasons described more fully herein, the motion is due to be granted.

## I.   Background[1]

On February 12, 2015, Defendant submitted an affidavit in support of an application for a warrant for Plaintiff's arrest. The affidavit described a burglary committed on February 9, 2015, during which a black female knocked on the victim's door, forced herself inside the victim's house, and demanded money from

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Johnson v. Midland Funding, LLC*, 823 F.3d 1334, 1337 (11th Cir. 2016).

the victim before fleeing the scene. The affidavit also stated that Plaintiff "was developed as a suspect in the case. A 6[-]person photo line-up that contained [Plaintiff's] photo was shown to [the victim]. [The victim] picked [Plaintiff] out in the photo line-up as the person who came into her house."

According to Plaintiff, however, "no photo line-up was used . . . in this case because there was no suspect." Plaintiff alleges that Defendant understood that "the term photo line-up connotes a photo array compiled with one (and only one) suspect together with fillers (photos of other individuals fitting the witness's description), normally five, and presented to the witness in a reasonable manner to prevent suggesting which person in the array is the suspect" and that the magistrate who signed the arrest warrant "would understand the term 'photo line-up' as having this meaning." Plaintiff further alleges that Defendant "knew that one technique for developing a lead on a case where there is no known suspect is to use . . . a 'mug book'" and that Defendant "obtained an old non-driver identification photograph of [Plaintiff] from an internet database used by the Tuscaloosa County Sheriff's [O]ffice while searching for people who might fit the description [of the burglary suspect] given by [the victim]." Plaintiff claims that although Defendant knew that using photographs of individuals with no previous criminal record—like Plaintiff—increased the risk of the witness identifying an

innocent person as the perpetrator, Defendant showed the victim a photo array that included Plaintiff's photograph, and the victim identified Plaintiff as the burglar. According to Plaintiff, she was not considered a suspect in the burglary before the victim selected her picture in the photo array, and Defendant "knew that a witness's identification of a perpetrator from a photo array containing no suspect was inherently unreliable." Plaintiff alleges that despite this, Defendant undertook no other investigation into the burglary prior to submitting the application for an arrest warrant.

Plaintiff was arrested pursuant to the warrant and taken to the Tuscaloosa County Jail. After Plaintiff was released on bail, Defendant came to Plaintiff's residence to interview her about the burglary. Plaintiff told Defendant that she knew nothing about the burglary and assisted Defendant in locating another woman whom police later determined actually committed the burglary. As a result, the Tuscaloosa County District Court dismissed the burglary charge against Plaintiff on February 23, 2015.

## II.   STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a

complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id*. If the pleading "contain[s] enough

information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

### III. Discussion

#### A. Official Capacity Claim

Defendant argues that as a sheriff's deputy, he is entitled to Eleventh Amendment immunity with respect to any claim against him in his official capacity. Plaintiff concedes in her response to the motion to dismiss that such a claim would be due to be dismissed pursuant to existing law and advises this Court that she brings her claim against Defendant in only his individual capacity. (Doc. 6 at 3.) Therefore, to the extent that Plaintiff's complaint may be construed to state a claim against Defendant in his official capacity, such a claim is due to be dismissed.

#### B. Individual Capacity Claim

With regard to Plaintiff's claim against him in his individual capacity, Defendant argues that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). To determine whether a defendant is entitled to qualified immunity, this Court asks whether a constitutional or statutory right "would have been violated under the plaintiff's version of the facts," *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (emphasis deleted), and whether that right "was 'clearly established' at the time of [the] defendant's alleged misconduct," *Pearson*, 555 U.S. at 232.

Plaintiff alleges that Defendant sought a warrant for her arrest without probable cause[2] and that she was maliciously prosecuted as a result. Assuming that Plaintiff has pled sufficient facts to establish a violation of her constitutional rights, Defendant "cannot be liable for malicious prosecution if the arrest warrant was supported by probable cause." *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016). "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause to make an arrest." *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010); *see Poulakis v. Rogers*, 341 F. App'x

---

[2] Plaintiff's allegation that Defendant "knew he lacked probable cause to obtain the warrant" is a purely legal conclusion that this Court must disregard in ruling on Defendant's motion because the existence of probable cause is for this Court to decide. *See Iqbal*, 556 U.S. at 678–79 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *United States v. Lindsey*, 482 F.3d 1285, 1292 n.5 (11th Cir. 2007) (stating that inquiry "of whether probable cause existed to justify the arrest" is "legal conclusion").

523, 526–27 (11th Cir. 2009) ("In wrongful arrest cases, we have frequently framed the 'clearly established' prong as an 'arguable probable cause' inquiry."). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff." *Grider*, 618 F.3d at 1257. Even if the officer is mistaken in his conclusion that probable cause exists, he is entitled to qualified immunity as long as that conclusion was reasonable under the circumstances. *Id.*

In this case, Defendant composed a "mug book" of photographs of individuals who matched the victim's description of the burglar. Defendant then presented the "mug book" to the victim, who identified Plaintiff as the burglar. Notwithstanding Plaintiff's allegation that Defendant knew this method of identification was "inherently unreliable," it appears to be a fairly common investigative tool used by law enforcement in Alabama. *See, e.g.*, *Ex parte Popwell*, 516 So. 2d 515, 515 (Ala. 1987); *Shanklin v. State*, 187 So. 3d 734, 784 (Ala. Crim. App. 2014). Plaintiff has proffered no case law—and this Court has found none—that would have indicated to Defendant prior to his submission of the warrant application that the "mug book" identification was not enough to establish probable cause. *See Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998) (stating

that plaintiff bears burden "of demonstrating the absence of probable cause in order to succeed in [his] § 1983 claim"). To the contrary, the existing case law suggests that a witness's identification of the perpetrator of a crime is generally *sufficient* to provide probable cause to arrest the suspect. *United States v. Smith*, 318 F. App'x 780, 792 (11th Cir. 2009) (per curiam) (citing *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) ("An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause to stop the suspect."); *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2001) ("[W]e have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause.")). It therefore cannot be said that Defendant acted as no reasonable officer would have under the same circumstances. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) (stating that to overcome qualified immunity, plaintiff "must demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances"). Moreover, Defendant was not required to "take every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person." *Rankin*, 133 F.3d at 1436 (internal quotation marks omitted). He is thus entitled to qualified immunity with respect to Plaintiff's claim against him in his individual capacity.

## IV. Conclusion

For the reasons described herein, Defendant's motion to dismiss (Doc. 3) is due to be granted. A separate Order consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

**DONE** AND **ORDERED** ON JULY 26, 2017.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

186289